BEHNKE and wife, Respondents, v. RADTKE, Appellant.

*No. 259. Submitted under sec. (Rule) 251.54 October 3, 1974.—
Decided October 29, 1974.*
(Also reported in 222 N. W. 2d 686.)

. . .

The cause was submitted for the appellant on the brief of *Robert R. Studt* and *Jenswold, Studt, Hanson, Clark & Kaufmann,* all of Madison, and for the respondents on the brief of *John G. Gerlach,* attorney, and *David G. Walsh* of counsel, all of Madison.

ROBERT W. HANSEN, J. At the demurrer stage we deal with the pleadings, not testimony, accepting as true the allegations of plaintiff's complaint in determining whether such complaint states a cause of action.

While both relate to the effect of the insurance coverage clause being left with no dollar amount specified, we see the defendant here as raising two separate and alternative grounds for demurrer. One relates to the effect of the clause, "as interest may appear," in the insurance coverage provision. The other relates to the legal consequences of the conceded intention of the parties that there be insurance coverage protecting the vendor, and the initial providing of such protection by the vendees here. We find that the issues thus raised are separable, and best considered separately.

As to the first, defendant appears to be arguing that, notwithstanding the fact that the space for the sum of money for which the purchaser covenants to keep the premises insured for fire and extended coverage is left blank, the provision in the remaining preprinted portion of the clause, and its reference to "as interest may appear," requires insurance protection be provided by the vendees to the extent of the outstanding purchase price unpaid.

It appears perfectly clear to us that the phrase, "as interest may appear," relates to the vendors' interest in the payment for loss by the insurance carrier, and not to their interest in the property. The phrase as used in the preprinted form does not require a vendee to purchase insurance for the vendor's protection but only dictates and determines its disposition if such insurance protection is purchased. Defendant cites a western state case for a contrary holding, but even that case construes the phrase, used there as used here, to mean only that "insurance money should be paid to the vendor as its interest may appear." [1] Or, as a midwestern federal court put it, the

[1] *Dysart v. Colonial Fire Underwriters* (1927), 142 Wash. 601, 608, 609, 254 Pac. 240, stating: "Such contracts, therefore, are good and enforceable between the parties according to their terms. So here, the parties by the terms of their contract fixed the rule which must govern them, and having in plain language provided

phrase merely provides for the contingency of a reduction in the debt between the date of the policy and the date of the loss.[2] This state has held a clause of this kind to relate to "the amount due upon the obligation, the payment of which is to be secured." [3] None of these cases was a "blank space" case, but they negative the contention that the clause following the space left blank creates or relates to the duty to provide insurance.

It is the defendant's contention, stated in his brief, that ". . . the insurance clause maintains its dignity and stands as a viable part of the contract whether or not the dollar figure is filled in." [4] We do not see the reference to "as interest may appear" which relates solely to disposition of insurance proceeds as giving such standing or filling in such blank space. Defendant says that "[t]he purpose of the blank dollar space is to give the clause

that the insurance money should be paid to the vendor as its interest may appear, under the well known and commonly accepted meaning of that term, the vendor was entitled to receive the unpaid balance of the purchase price out of the insurance money, and no more, because that payment would extinguish its interest in the subject-matter of the contract, and thereafter the remainder of the insurance money and the property remaining undestroyed would belong to the vendee, and it could maintain an action to recover the money and to compel the delivery of a deed which would vest the title in it; provided, always, of course, that the contract was in good standing and had not been forfeited. . . ."

[2] *Riteway Carriers, Inc. v. Stuyvesant Ins. Co.* (D. C. Minn. 1953), 114 Fed. Supp. 507, 512, holding: ". . . The words 'as interest may appear' merely provides for the contingency of a reduction in the debt between the date of the policy and the date of loss. . . ."

[3] *Cary Mfg. Co. v. Acme Brass & Metal Works* (1934), 215 Wis. 585, 590, 254 N. W. 513, this court stating: ". . . Under a clause of this kind it has been consistently held in Wisconsin that no assignment of the policy is effected, and the interest of the mortgagee is measured not by any interest in the property but by the amount due upon the obligation, the payment of which is to be secured. . . ."

[4] Defendant-Appellant's Brief, at page 5.

flexibility. . . ." [5] Whether or not that was the purpose, at the demurrer stage the result is that without a dollar amount specified the vendees were not, by the document on its face as written, required to carry any insurance at all for the vendors' protection. The reference to "as interest may appear" does not relate to nor itself create a requirement that the vendors be protected against fire loss in any specific amount or indeed at all.

As to what we see as a second and separable challenge by demurrer to the complaint, the defendant relies upon the conceded fact that the parties to the contract ". . . at all times intended that the vendee carry insurance on the property at least in the amount of the unpaid land contract balance. . . ." [6] Defendant adds ". . . [t]hat this was understood is demonstrated by the fact that vendee initially did cause the vendors to be additional insureds on the insurance policies to the extent of their interest. . . ." [7] So the defendant contends that, when the vendees removed the vendors as additional insureds, they violated their contract duties and the vendors ". . . thereupon, certainly had a right to enforce compliance with the land contract, but chose not to do so. . . ." [8] The defendant's conclusion is that the vendors thus ". . . slept on their rights leading to the loss complained of. . . ." [9]

We see the defendant's argument as one going to whether his negligence caused the loss suffered by plaintiffs. Plaintiffs have alleged that it did.[10] That is all they need do to withstand demurrer.

*By the Court.*—Order Affirmed.

---

[5] *Id.* at page 6.

[6] *Id.* at page 9.

[7] *Id.* at page 9.

[8] *Id.* at page 10.

[9] *Id.* at page 10.

[10] Paragraph 20 of the complaint alleges: "That as a proximate result of the carelessness and negligence of the Defendant Elmer H. Radtke in the drafting of the said land contract . . . the Plaintiffs have been damaged in the amount of Twenty-four Thousand Eight and 58/100 Dollars ($24,008.58)."